UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER RUSSELL,                        ) | |
|                                              ) | |
|                   Petitioner,               ) | |
|                                              ) | |
|          v.                                 )   Case No. 4:11 CV 1104 RWS | |
|                                              ) | |
| UNITED STATES OF AMERICA,                    ) | |
|                                              ) | |
|                   Respondent.               ) | |

## MEMORANDUM AND ORDER

Petitioner Christopher Russell has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.  Russell asserts several claims, including that his plea was not entered into voluntarily or knowingly, that he received ineffective assistance of counsel, that this Court lacked jurisdiction over his criminal case, and that he is actually innocent.

For the reasons set forth below, I will deny Russell's motion.

**I.      Background**

On March 18, 2010, Russell was indicted by a federal grand jury in a two count indictment.  In both counts he was charged with possession of child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B).  On February 14, 2011, Russell pleaded guilty to Count I.  At his plea hearing, Russell stated, under oath, that the Plea Agreement was true and correct.  The Plea Agreement set forth the following facts:

In 2007, St. Louis County Police identified a computer located in the State of Missouri that was offering to participate in the distribution of known child pornography.  (Plea Agreement at 9).  A subpoena issued to Charter Communications revealed that the subscriber was Ronica

Shelton.  Id.  Based upon this information, law enforcement officers applied for and obtained a

search warrant for Ronica Shelton's residence.  Id.  Law enforcement officers executed the

warrant on February 25, 2008.  Id.  Law enforcement officers seized a Gateway 2000 Desktop

Computer containing a Quantum hard drive and a Compaq Presario Desktop Computer

containing a Seagate hard drive.  Id.  Russell was present at the time of the search and was later

interviewed by a police officer.  Id.  During the course of the interview, Russell made statements

indicating his knowing possession of child pornography as well as his use of the internet to

acquire those images.  Id. at 10.  A forensic examination was conducted on Russell's seized hard

drives.  Id.  The examination found that both the Quantum hard drive and the Seagate hard drive

contained multiple images of child pornography.  Id.

Russell filed pre-trial motions to suppress the evidence.  I adopted United States

Magistrate Judge Thomas C. Mummert, III's Report and Recommendation denying Russell's

motion to suppress.

Russell appeared for a change of plea on December 23, 2009, but did not enter a plea of

guilty.  The change of plea proceeding was continued to December 29, 2009.  On December 29,

2009, Russell again declined to plead guilty.  On April 1, 2010, Russell entered a guilty plea to

Count I in exchange for the Assistant United States Attorney's promise to dismiss Count II, as

well as an agreement not to pursue a four-level enhancement for material containing sadistic or

violent behavior.

At his plea hearing, Russell told me, under oath, that he was satisfied with his counsel's

representation.  (Plea Hr'g Tr. at 6).  Russell told me that he had gone over his plea agreement

with counsel and that counsel answered all of Russell's questions.  Id. at 8–9.  Russell stated that

-2-

no one had made any other promise or assurance to him in order to induce him to plead guilty. Id. at 14.  Russell stated that he understood that he had the opportunity to plead not guilty and have a trial by jury, and that he knew there would be no trial if he entered a guilty plea.  Id. at 7–8.

The United States Probation Office prepared a presentence investigation report (PSR). The Assistant United States Attorney subsequently learned that Russell might have a juvenile criminal record that had not been available to the Probation Office.  The PSR was amended and as a result, Russell's Criminal History Category was changed from Category I to Category III. Based on the amended PSR, the advisory guideline range for Russell's sentence increased from 46 to 57 months to 57 to 71 months.  Absent the plea agreement, the guideline range would have been 100 to 125 months.  However, I found that a Criminal History Category I would be more appropriate, granted a further variance, and sentenced Russell to a sentence of 42 months imprisonment to be followed by supervised release for life.  (Sentencing Hr'g Tr. at 23–24).

Russell now claims, contrary to what he said under oath at his plea hearing, that his guilty plea was not made knowingly or voluntarily and that he received ineffective assistance of counsel.  He also asserts that this Court lacked jurisdiction to hear his criminal case.  He also appears to assert a claim of actual innocence.

## II.    Grounds for Relief

In his 28 U.S.C. § 2255 motion, Russell alleges the following grounds for relief:

1.    He was subject to prosecutorial misconduct in that the Assistant United States Attorney requested a continuance of the sentencing hearing so that his juvenile records could be obtained;

-3-

2.      His plea was not made knowingly or voluntarily because his counsel did not

adequately explain the plea agreement or the consequences of a guilty plea;

3.      He was denied effective assistance of counsel in violation of the Sixth

Amendment when his counsel failed to:

> (a) explain the plea agreement;
>
> (b) challenge alleged violations of Russell's First and Fourth Amendment rights;
>
> (c) file a motion to suppress the warrant due to staleness of information;
>
> (d) point out an error in the criminal cover sheet;
>
> (e) object to the enhancement for use of a computer when the enhancement is built
>
> into the original offense;
>
> (f) preserve his rights to a speedy trial; and
>
> (g) challenge this Court's jurisdiction;

4.      This Court lacks jurisdiction because there is no sufficient interstate nexus

and the charged conduct is not commercial; and

5.      Russell is actually innocent because the word "materials" in the child pornography

statute does not include computers and hard drives.

## III.      Standard for § 2255 Relief

Section 2255 of Title 28 of the United States Code provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground [1] that the sentence was imposed in
> violation of the Constitution or laws of the United States, or [2] that the court was
> without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the
> maximum authorized by law, or [4] is otherwise subject to collateral attack, may move
> the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C.

§ 2255 a defendant in federal custody may seek post conviction relief on the ground that his

sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of

the United States, was in excess of the maximum authorized by law, or is otherwise subject to

collateral attack.").  A motion pursuant to § 2255 "is 'intended to afford federal prisoners a

remedy identical in scope to federal habeas corpus.'"  United States v. Wilson, 997 F.2d 429, 431

(8th Cir. 1993) (quoting Davis v. United States, 417 U.S. 333, 343 (1974)).

"'Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral

proceeding based on 28 U.S.C. § 2255.'"  Theus v. United States, 611 F.3d 441, 449 (8th Cir.

2010) (quoting United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001)).  One exception arises

when there is a "miscarriage of justice," but the Eighth Circuit Court of Appeals has "recognized

such an exception only when petitioners have produced convincing new evidence of actual

innocence," and the Supreme Court has not extended the exception beyond situations involving

actual innocence.  Wiley, 245 F.3d at 752.  "[T]he Court has emphasized the narrowness of the

exception and has expressed its desire that it remain rare and available only in the extraordinary

case."  Id. (citations omitted).  Section 2255 ordinarily "is not available to correct errors which

could have been raised at trial or on direct appeal."  Ramey v. United States, 8 F.3d 1313, 1314

(8th Cir. 1993).  "Where a defendant has procedurally defaulted a claim by failing to raise it on

direct review, the claim may be raised in habeas only if the defendant can first demonstrate either

cause and actual prejudice, or that he is actually innocent."  Bousley v. United States, 523 U.S.

614, 622 (1998) (citations omitted).

IV.    ANALYSIS

-5-

## A.    Russell Was Not Subject to Prosecutorial Misconduct

Russell claims that the Assistant U.S. Attorney manipulated the Court and the Probation Office by asking for a continuance of the sentencing so that it could request an order from the Court permitting the Probation Office to obtain Russell's juvenile records, and then had the Probation Office change his criminal history category from I to III.  While Russell does not explicitly refer to prosecutorial misconduct, I construe this as such a claim.

No formal limitations are imposed on the contents of pre-sentence reports, or the sources from which their information may be obtained.  Gregg v. U.S., 394 U.S. 489, 492. Fed.R.Crim.P. 32(c) requires only that the defendant have an opportunity to see the report and the opportunity to object to the report at the sentencing hearing.  Kohley v. United States, 784 F.2d 332, 334 (8th Cir. 1986).  A defendant's juvenile criminal history is an appropriate sentencing consideration.  United States v. Johnson, 572 F.3d 449, 454 (8th Cir. 2009).

The Assistant U.S. Attorney did not engage in any misconduct by requesting an order releasing Russell's juvenile record.  Further, Russell did not receive any criminal history points for the juvenile conviction.  (Sentencing Hr'g Tr. at 23).  As a result, he did not suffer any harm as a result of the inclusion of his juvenile record**.**

## B.    Russell's Guilty Plea Was Made Knowingly and Voluntarily

Russell alleges that his guilty plea was not made knowingly and voluntarily.  He asserts that his attorney did not adequately explain the nature of the charges against him and the consequences of his plea, and that he therefore did not understand them.  This claim is directly contradicted by the Plea Agreement, Russell's plea colloquy, and the transcript of his sentencing hearing.

-6-

In his Plea Agreement, Russell agreed to "waive all rights to contest the conviction . . . in any post-conviction proceeding, including one pursuant to" § 2255 "except for claims of prosecutorial misconduct or ineffective assistance of counsel." (Plea Agreement at 4). The Plea Agreement, Russell's plea colloquy, and the transcript of his sentencing hearing clearly demonstrate that Russell knowingly and voluntarily waived his right to file this motion.

Because Russell also has not contested that these waivers were given both "knowingly and voluntarily," the waiver is enforceable. United States v. Rutan, 956 F.2d 827, 829 (8th Cir. 1992) ("If a waiver of appeal is made knowingly and voluntarily, it is enforceable."). However, even if Russell's challenge to the voluntariness of his plea could be construed as an ineffective assistance of counsel claim, which would survive his waiver of § 2255 post-conviction relief, it still must fail the reasons stated below.

### C.    Russell Received Effective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. A claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. See United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings.").

To prevail on a claim alleging ineffective assistance of counsel, the defendant must satisfy the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). For a convicted defendant to prove his counsel was ineffective, the defendant must first show that the counsel's performance was deficient. Strickland, 466 U.S. at 687. This requires the defendant to show

"that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. A defendant can demonstrate that counsel's performance was deficient where counsel's performance "'fell below an objective standard of reasonableness.'" Wiggins v. Smith, 539 U.S. 510, 522 (2003) (quoting Strickland, 466 U.S. at 688). But "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." United States v. Rice, 449 F.3d 887, 897 (8th Cir. 2006) (quoting Strickland, 466 U.S. at 690). And "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689). If the defendant fails to show that his counsel was deficient, the court need not address the second prong of the Strickland test. Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002).

Second, the defendant must demonstrate that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In the context of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Eighth Circuit has described the Strickland test as follows: the questions a court must ask are "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then

-8-

we need not address the other part of the test." <u>Fields v. United States</u>, 201 F.3d 1025, 1027 (8th Cir. 2000).  When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.  Considered objectively, counsel's performance is gauged by "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" <u>Fields</u>, 201 F.3d at 1027 (quoting <u>Strickland</u>, 466 U.S. at 688).  "[W]e avoid making judgments based on hindsight." <u>Id.</u>  A reviewing court's "scrutiny of counsel's performance must be highly deferential." <u>Strickland</u>, 466 U.S. at 689.

Where a defendant raises multiple claims of ineffective assistance, each claim must be examined independently rather than collectively.  <u>Hall v. Luebbers</u>, 296 F.3d 685, 692-93 (8th Cir. 2002).

### a.     Counsel Did Not Fail To Adequately Explain the Plea Agreement

"Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.  When one so pleads, he may be held bound." <u>United States v. Frook</u>, 616 F.3d 773, 775 (8th Cir. 2010) (quoting <u>Kercheval v. United States</u>, 274 U.S. 220 (1927)).  "The voluntariness of a guilty plea presents a mixed question of law and fact subject to independent review by this court." <u>Porter v. Lockhart</u>, 925 F.2d 1107, 1110 (8th Cir. 1991) (quoting <u>Blalock v. Lockhart</u>, 898 F.2d 1367, 1370 (8th Cir. 1990)).

"The test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Id.</u> at 1110 (citing <u>North Carolina v. Alford</u>, 400 U.S. 25, 31 (1970)).  A guilty plea is voluntary

if it is "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . ." Brady v. United States, 397 U.S. 742, 755 (1970).  "[I]t must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." Id. (citation omitted).  When a defendant pleads guilty and then later alleges that the plea was not made voluntarily, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).  Here, Russell has failed to show that any information which formed the basis of his sentence was a surprise or was not contemplated by the Plea Agreement.

A "defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (quoting Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985)).  Russell has a heavy burden to overcome admissions made at a plea hearing to show that the plea was involuntary and not intelligently entered.

Russell claims that his plea was not intelligently entered because

[m]erely reading the plea agreement does not put a defendant on notice as to what the law is, how the conduct alleged fits into that law, the pro's and con's of a trial vs. a guilty plea, or the consequences of a trial over a plea.  There is so much more in considering and accepting a plea agreement, then verbally pleading guilty than what's in the content of the plea agreement.

(Petition at 4–5).  Russell's assertion that I directed Russell's counsel to read the entire agreement to him prior to the plea proceedings, and that this is evidence that his counsel failed to

-10-

adequately explain the consequences of a guilty plea, is clearly contradicted by the record. Whether or not a recess was taken in order for the plea agreement to be read to him, Russell repeatedly affirmed under oath that he fully understood his plea and its consequences.  At his plea hearing, Russell stated that he was satisfied with his attorney's representation and the advice given to him by his attorney.  (Plea Hr'g Tr. at 6).  He was asked if he had gone over the Plea Agreement with his attorney, and he stated that he had and that he did not object to anything in it. Id. at 8.  He was asked if he understood that he had the right to plead not guilty and that by pleading guilty he waived his right to a trial and other rights associated with a trial, and Russell stated that he understood.  Id. at 7.

The written Plea Agreement and stipulation Russell entered into with the government also addressed the voluntariness of the guilty plea.  The Plea Agreement contained the following stipulation:

> The defendant acknowledges that the defendant has *voluntarily entered* into both this plea and these agreements, recommendations and stipulations.  The defendant further acknowledges that this guilty plea is made of *the defendant's own free will* because the defendant is, in fact, guilty of the conduct specified in sections four and five above.

(Plea Agreement at 18) (emphasis added).  Furthermore, the Plea Agreement establishes that Russell was fully advised of the rights he was giving up as a result of his guilty plea.  The written Plea Agreement contained the following stipulation:

> The *defendant's counsel has explained these rights and the consequences of the waiver of these rights*.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.  *The defendant is fully satisfied with the representation received from defense counsel*.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  *Defense counsel*

> *has completely and satisfactorily explored all areas* which the defendant has
> requested relative to the government's case and any defenses.

(Plea Agreement at 16) (emphasis added).  Russell was aware of the possible penalties and the

length of his potential sentence prior to pleading guilty.  The Plea Agreement contained the

following stipulation pertaining to the length of Russell's sentence:

> The Defendant fully understands that the maximum penalty provided by law for
> the crime to which the defendant is pleading guilty is a term of imprisonment of
> not more than ten years, a fine of not more than $250,000, or both such
> imprisonment or fine.  The Court may also impose a period of supervised release
> of not more than life.

(Plea Agreement at 13).  Russell's awareness of the statutory maximum is also evident from the

plea colloquy, wherein the following exchange occurred:

> COURT: Do you understand that the term of imprisonment for the charge to
> which you're pleading guilty is a term of not more than ten years?
> Russell: Yes, I do.
> COURT: There is a maximum fine of $250,000?
> Russell: Yes.
> COURT: That you could be sentenced to the maximum term of imprisonment or
> assessed the maximum fine or both?
> Russell: Yes, I do.

(Plea Hr'g Tr. at 18).  The record also indicates that Russell was fully aware of the charge

against him and the elements of the offense.  (Plea Agreement at 13 and Plea Hr'g Tr. at 13).

Both the plea colloquy and plea stipulation contained a recitation of the factual basis for the plea.

(Plea Agreement at 9–13 and Plea Hr'g Tr. at 14–18).

Because Russell stated that he was satisfied with the work his counsel had done on his

behalf, that he knew of the maximum statutory penalty, that he was aware of the charge against

him and the elements of the offense, and that he was informed of the consequences of a guilty

plea, he cannot overcome the strong presumption that his attorney competently represented him

-12-

and that his guilty plea was voluntary.  The record clearly establishes that he was fully aware of his constitutional rights and that he waived those rights and pleaded guilty.

> **b.     Counsel's Failure to Challenge Alleged Violations of Russell's First and Fourth Amendment Rights Did Not Render Her Assistance Ineffective**

Russell asserts that his attorney was ineffective for failing to challenge alleged violations of Russell's First and Fourth Amendment rights.

The grounds for Russell's First Amendment claim are unclear, however, it appears that he asserts that he has a First Amendment right to possess images of child pornography.  There is no such First Amendment right.  See Osborne v. Ohio, 495 U.S. 103 (1990); New York v. Ferber, 458 U.S. 747 (1982).  Counsel is not ineffective for failing to make a meritless argument.  Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994); see also Rodriguez v. U.S., 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to raise a meritless argument cannot constitute ineffective assistance.").  As a result, Russell's claim he received ineffective assistance of counsel for counsel's failure to challenge violations of Russell's First Amendment rights is meritless.

Russell argues that his attorney was ineffective for failing to pursue violations of his Fourth Amendment rights in that the search warrant in his case lacked probable cause.  Russell's attorney did, in fact, file a motion to suppress the seizure of evidence on the grounds that the search warrant lacked probable cause.  (Mot. to Suppress at 2).

However, Russell asserts an argument that his counsel did not bring in her Motion to Suppress: that the initial search of "every computer . . . using a peer to peer file-sharing software protocol . . . sharing a file that contained  the word 'pre' or 'preteen' . . . violate[d] the 4th Amendment."  (Petition at 5–6).

-13-

When moving to suppress evidence on the basis of an alleged unreasonable search, the defendant has the burden of showing a legitimate expectation of privacy in the area searched. United States v. James, 534 F.3d 868, 872 (8th Cir. 2008).  There is no reasonable expectation of privacy in files on a personal computer which are accessible to others for file sharing based on a defendant's installation and use of file sharing software.  United States v. Stults, 575 F.3d 834, 843 (8th Cir. 2009).  Thus a federal agent's use of a file-sharing program to access child pornography files on a defendant's computer does not violate the defendant's Fourth Amendment rights.  Id.

Even when there is no reasonable expectation of privacy, a Fourth Amendment violation may be found when the government trespasses upon the areas ("persons, houses, papers, and effects") mentioned in the Constitutional text.  United States v. Jones, 132 S. Ct. 945, 950 (2012).  Here, however, Russell was using a file-sharing program that broadcast the contents of his computer to the internet and invited users to search those contents.  (Plea Agreement at 9–10).  Thus no government trespass into Russell's home or effects occurred.

As a result, Russell's claim that his Fourth Amendment rights were violated is meritless, and his counsel was not ineffective for failing to raise Russell's Fourth Amendment claim.

### c.      Counsel Was Not Ineffective for Failing to Raise a Staleness Challenge

Russell argues that his counsel should have raised a staleness issue regarding the search warrant.  (Petition at 6).  There is no bright-line test for determining when information is stale. United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993).  The factors in determining whether probable cause has dissipated, rendering the warrant fatally stale, "include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the

search." <u>United States v. Gibson</u>, 123 F.3d 1121, 1124 (8th Cir. 1997).

The 8th Circuit has held that a five-month delay between discovering information linking a defendant's residence with child pornography and obtaining search warrant did not render the warrant invalid based on staleness. <u>United States v. Estey</u>, 595 F.3d 836, 839 (8th Cir. 2010). When coupled with other evidence, even information about possession of child pornography which is several years old may be relevant to the determination of whether to issue a warrant, because common sense dictates that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes. <u>United States v. Hyer</u>, 498 F. App'x 658, 659 (8th Cir. 2013).

Here, law enforcement officers obtained the information contained in the search warrant affidavit in November 2007. They applied for a search warrant based on that information in February 2008. Any claim that the information contained in the search warrant was stale would have been unsuccessful. Therefore, Russell's attorney was not ineffective for failing to raise a meritless argument. <u>Dyer</u>, 23 F.3d at 1426.

### d.    Counsel's Assistance Was Not Ineffective in that She Did Not Challenge an Error in the Criminal Cover Sheet

Russell argues that "counsel was also ineffective for failing to . . . inform the court that [the criminal cover sheet] informed this petitioner . . . that supervised release was not more than 3 years." (Petition at 8).

This mistake meets neither prong of the <u>Strickland</u> test. The defendant must show errors "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U .S. at 687. A "minor clerical error is not sufficient to raise an

issue of constitutional significance." Aldridge v. Dormire, 4:06 CV 1641 CEJ, 2010 WL 883656 (E.D. Mo. Mar. 5, 2010).  Here, the error was minor, and Russell does not claim that as a result of the error on the cover sheet, he was deprived of notice of the nature of the charges against him or the sentence likely to be imposed.

This claim also fails because Russell must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Jeffries v. United States, 721 F.3d 1008, 1012 (8th Cir. 2013) (quoting Strickland, 466 U.S. at 669).  Russell has not argued, and it is hard to imagine, how fixing the cover sheet error could have changed the outcome in his case.

**e.** **Counsel's Failure to Object to the Enhancement for Use of a Computer Did Not Constitute Ineffective Assistance**

Russell argues that his counsel was ineffective for failing to challenge the enhancement for the use of a computer, arguing that this enhancement "is built in to the original offense," because the vast majority of cases involve use of a computer.  (Petition, 8).

Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines. United States v. Zech, 553 F.3d 663, 668 (8th Cir. 2009) (internal quotations omitted).  Impermissible double counting does not occur if the conduct enhancing the punishment addresses conceptually separate sentencing notions. United States v. Hackman, 630 F.3d 1078, 1084 (8th Cir. 2011).

Here, the possession of child pornography and the use of a computer are conceptually separate notions.  Russell cites no authority in support of the proposition that the vast majority of child pornography cases involve use of a computer, but even taken as true, that assertion is

irrelevant in considering whether double counting has occurred.  As the Assistant United States Attorney correctly points out, "the Government has prosecuted individuals who have had printed images of child pornography in their possession."  (Resp. to Show Cause Order at 21).  Other cases have involved video cameras or other devices but not computers.  See, e.g., United States v. Wilson, 1:07CR53 HEA, 2008 WL 342397 (E.D. Mo. Feb. 5, 2008).

Therefore, Russell's attorney was not ineffective for failing to raise a meritless argument. Dyer, 23 F.3d at1426.

### f.      Counsel Was Not Ineffective for Failing to Preserve Russell's Rights to a Speedy Trial

Russell argues that his counsel was ineffective for failing to preserve his rights to a speedy trial.  (Petition at 9).  He claims that this is "supported by the record as well."  Id.  He offers no legal argument or specific evidence in support of this position.  A review of the record reveals no evidence of a speedy trial violation.  Moreover, Russell filed not one, but two Waivers of Speedy Trial.  (Doc. 50-2, Doc. 69).

### g.      Counsel Was Not Ineffective Due to her Failure to Challenge this Court's Jurisdiction

Russell claims his counsel was ineffective for failing to challenge this Court's jurisdiction over his criminal case.  Specifically, Russell claims that this Court lacked jurisdiction because there was an insufficient interstate nexus regarding his receipt of child pornography.  I address Russell's challenge to the Court's jurisdiction below.  For the reasons stated there I find this claim to be without merit.  As a result, Russell's counsel cannot be constitutionally ineffective for failing to make a meritless argument.  Dyer, 23 F.3d at 1426.

**D.      This Court Has Jurisdiction Because There Was a Sufficient Interstate Nexus**

Russell claims that this Court lacks jurisdiction over his criminal trial. Russell's claim is without merit.

The Plea Agreement set forth the factual allegations that Russell accepted in choosing to plead guilty, including the following stipulation:

> the defendant admits to knowingly violating Title 18, United States Code, Section 2252A(a)(5), and admits there is a factual basis for the plea and further fully understands that the elements of the crime of Possession of Child Pornography are: (1) he knowingly possessed material that contained images of child pornography; ( 2) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct; and (3) those images are contained on material that has *been transported in interstate commerce and were themselves transported in interstate commerce.*

(Plea Agreement at 5) (emphasis added).  The use of digital equipment to store child pornography satisfies the interstate or foreign commerce element.  The United States Court of Appeals for the Eighth Circuit has held the interstate commerce element of § 2252A fulfilled where child pornography was stored on a digital memory card which had previously been transported in interstate and foreign commerce.  United States v. Mugan, 441 F.3d 622, 628-30 (8th Cir. 2006.  The images at issue in this case were found on two computers.  The hard drive in one of the computers was manufactured in Japan, and the hard drive in the other computer was manufactured in China.  These pieces of equipment were materials that had been "shipped or transported in interstate or foreign commerce" under § 2252A(a)(2).  As a result, the interstate commerce element has been met.

Even if Russell's use of the hard drives does not satisfy the interstate commerce

-18-

requirement, Russell's use of the internet satisfies the interstate commerce requirement.  United

States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007) (the internet is an instrumentality and channel

of interstate commerce and Congress has the power to regulate the internet).  See also United

States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to

regulate the internet, as it does other instrumentalities and channels of interstate commerce, and

to prohibit its use for harmful or immoral purposes regardless of whether those purposes would

have a primarily intrastate impact.")

### E.      Russell is Not Actually Innocent

Russell appears to assert a free-standing actual innocence claim, arguing that 18

U.S.C. 2252A(a)(5)(B) does not apply to him because computers or hard drives are not

"materials":

> The government claims jurisdiction by misinterpreting a phrase added to the
> statute in 1996 est.  The phrase "or was produced using materials that have been
> mailed, shipped, or transported in interstate commerce by any means, including by
> computer."  The government and the court have misinterpreted the word
> "materials" as meaning computers, hard drives, cds, cameras or other equipment.

(Petition at 7).  18 U.S.C. 2252A(a)(5)(B) provides for criminal liability for any person

who

> knowingly possesses, or knowingly accesses with intent to view, any book,
> magazine, periodical, film, videotape, computer disk, or any other material that
> contains an image of child pornography that has been mailed, or shipped or
> transported using any means or facility of interstate or foreign commerce or in or
> affecting interstate or foreign commerce by any means, including by computer, *or*
> that was produced using materials that have been mailed, or shipped or
> transported in or affecting interstate or foreign commerce by any means, including
> by computer . . . .

18 U.S.C. 2252A(a)(5)(B) (emphasis added).  Russell provides no authority for the

proposition that "materials" does not refer to computers, cameras or hard drives.  But even if

-19-

Russell's interpretation of clause of the statute he cites is accurate, it is irrelevant, because his criminal liability is not based on the clause of the statute he cites; rather, it is based on the clause immediately preceding the one he cites: he knowingly possessed images of child pornography that were "transported using any means or facility of interstate . . . commerce."  18 U.S.C. 2252A(a)(2).  The internet is an instrumentality and channel of interstate commerce.  United States v. Trotter, 478 F.3d at 921.

Moreover, a free-standing claim of actual innocence is not cognizable in a collateral proceeding such as a the instant § 2255 motion.  "[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petition must pass to have [an] otherwise barred constitutional claim considered on the merits."  Herrera v. Collins, 506 U.S. 390, 404 (1993).  See also Bousley v. United States, 523 U.S. 614, 623 (1998).  "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (internal citations omitted).

Russell's free-standing actual innocence claim is not cognizable.  Moreover, he has not adduced any additional evidence that would support a finding that no reasonable juror would have convicted him.

### F.    An Evidentiary Hearing is not Warranted

I will not hold an evidentiary hearing on this matter.  "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief."  Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted).  However, an evidentiary hearing

need not be held if Russell's "allegations cannot be accepted as true because they are contradicted

by the record, inherently incredible or conclusions rather than statements of fact." Delgado v.

United States, 162 F.3d 981, 983 (8th Cir. 1998).  Because the record conclusively shows that

Russell is not entitled to relief as a matter of law, I need not hold a hearing.

**V.      Certificate of Appealability**

For this Court to grant a certificate of appealability, Russell must make a substantial

showing that his constitutional right was denied.  See Cox v. Norris, 133 F.3d 565, 569 (8th Cir.

1997).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a

court could resolve the issues differently, or the issues deserve further proceedings." Id.  For the

reasons set forth above, I find Russell has not made such a showing.  As such, I will not issue a

certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED that** the motion of Christopher Russell to vacate, set aside

or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

**IT IS FURTHER ORDERED that** the motion for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED that** this Court will not issue a certificate of

appealability, as Russell has not made a substantial showing of the denial of a federal

constitutional right.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 16th day of October, 2013.